IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

THE BURLINGTON INSURANCE )
COMPANY, FIRST FINANCIAL )
INSURANCE COMPANY, and )
BURLINGTON INSURANCE GROUP, )
INC., )
 )
    Plaintiffs, )
 )
    v. )      1:99CV00334
 )
TRYGG-HANSA INSURANCE )
COMPANY AB, )
 )
    Defendant. )

MEMORANDUM OPINION

OSTEEN, District Judge

    Pending before this court are cross-motions to confirm an arbitration award from Plaintiffs The Burlington Insurance Co. ("BIC"), First Financial Insurance Co. ("FFIC"), and Burlington Insurance Group, Inc. ("BIG") (collectively, "Plaintiffs") and Defendant Trygg-Hansa Insurance Co. AB ("Defendant"). The parties had disputes that two different arbitral panels settled. This court rendered the first panel's award into a judgment and stayed execution on the judgment pending the second panel's award. Plaintiffs additionally move to lift the stay on the judgment's execution and seek further discovery as to the second panel's intent, and Defendant seeks to vacate the same judgment under Federal Rule of Civil Procedure 60(b). For the reasons

stated below, the court will deny Plaintiffs' motion to lift the stay on execution and grant Defendant's motions to confirm the second arbitration award and vacate the prior judgment. The court will deny Plaintiffs' further motions as well.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

In early 1991, Defendant and BIG, the parent to BIC and FFIC, entered into a memorandum of agreement. Under that agreement, Defendant loaned $6 million to BIG to increase BIC's and FFIC's underwriting capacity and agreed to explore both a possible joint venture with BIG and reinsurance program[1] with BIC and FFIC. BIG also executed a promissory note, which is deeply subordinated to other obligations, for $6 million to Defendant to secure the $6 million loan.

Defendant eventually became the reinsurer that same year to BIC and FFIC, and BIC's and FFIC's profits under the reinsurance contracts went to repay the loan amount. Defendant's reinsurance contracts with BIC and FFIC both contained identical arbitration clauses. As security for those contracts, Defendant posted

---

[1] A reinsurer issues reinsurance.

> Reinsurance is purchased by insurance companies to insure their liability under policies written to their insureds. Typically, an insurer who has provided coverage against a large loss will cede all or part of that risk to other insurance companies along with a portion of the premiums. Ceding risk increases the insurer's capacity to insure other customers and decreases the likelihood that insurer insolvency will result from any large claim.

North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1199 (3d Cir. 1995) (citation omitted). Thus, reinsurance insures an insurer against possible liabilities.

2

letters of credit for BIC's and FFIC's benefits. Up until 1993, BIC and FFIC made no claims on the reinsurance contracts.

During late 1993, for various disputed reasons, Defendant began to phase out its reinsurance business. BIG, FFIC, and BIC met with Defendant to discuss a change in the original memorandum of agreement in light of this change in Defendant's business. The parties then amended the 1991 agreement ("1994 amendment"). Under the 1994 amendment, Defendant would no longer reinsure any of BIC's and FFIC's insurance contracts created after January 1, 1994. Furthermore, the parties replaced the promissory note with a $3 million note and changed the loan amount from $6 million to $3 million. In making this adjustment, Defendant somehow calculated projected risks under the reinsurance contracts' effective periods.

Thereafter, Plaintiffs made several claims that fell under the reinsurance contracts' effective periods. Defendant's subsequent audit of financial records suggested Plaintiffs kept Defendant purposefully ignorant of the likelihood of claims arising during the reinsurance contracts' effective periods. Because Plaintiffs allegedly hid Defendant's actual exposure under the reinsurance contracts, Defendant argues Plaintiffs fraudulently induced and procured the promissory note's replacement and loan amount's reduction.

After the number of claims "surprisingly" increased, Defendant stopped paying on any reinsurance claims. FFIC and BIC then depleted Defendant's letters of credit in order to pay off

3

the new claims.  They also demanded Defendant post further letters of credit to cover claims, which Defendant did not do.

In 1999, BIC and FFIC commenced arbitration on Defendant's obligation to pay claims arising from the reinsurance contracts' effective periods.  Additionally, Plaintiffs commenced a state court action that sought relief apart from the arbitration action, including breach-of-contract claims and consequential damages, consequential damages from a breach of good faith and fair dealing, relief under North Carolina's deceptive trade practices statute, punitive damages, relief under North Carolina's insurance code, and a declaratory judgment that the 1994 amendment was valid and enforceable.  Defendant removed that action to this court and counterclaimed for a declaratory judgment that the 1994 amendment was null and void.  Defendant then moved to stay the entire action pending arbitration of the action's claims.  This court's March 17, 2000, order granted Defendant's motion in part.  This court held the reinsurance contracts' arbitration clauses were narrow, and thus, any claim that fell outside a "contractual remedy" was not subject to the clauses.

Specifically, the declaratory judgment that the 1994 amendment was valid and the claims for extra-contractual damages fell outside the narrow arbitration clauses' scopes.  The court thereafter stayed trial on all claims pending arbitration.  On April 16, 2001, the arbitration panel issued its final award, which this court reduced to a judgment ("Award I").  In Award I,

4

the panel considered Defendant's failure to pay claims under the reinsurance contracts and Defendant's claims that part of the reinsurance contracts should be rescinded. The panel awarded amounts to BIC, FFIC, and Defendant. After computing a net amount, Defendant owed over $3 million to BIC and $1.5 million to FFIC. This court, after reducing Award I to judgment, stayed execution upon that judgment pending the second arbitration's award, and Defendant filed bonds to secure its performance under that judgment.

On May 23, 2001, the Fourth Circuit reversed this court's March 17, 2000, ruling to the extent it denied arbitration for any of the claims; all of Plaintiffs' claims must go to arbitration. See Burlington Ins. Co. v. Trygg-Hansa Ins. Co. AB, 9 Fed. Appx. 196 (4th Cir. 2001). On remand from the Fourth Circuit, this court stayed the entire case pending arbitration of all claims.

A second arbitration panel decided those remaining claims and Defendant's counterclaim. Defendant also asserted that FFIC and BIC were liable on the loan amount, as was BIG by way of its promissory note. During the second arbitration, Defendant argued in its briefs and oral arguments that Award I may be setoff within Award II. Defendant's argument was that Award I decided that Defendant owed amounts to FFIC and BIC. Award II could additionally decide that FFIC and BIC owed amounts under the loan to Defendant. If that were to occur, then Award I could be

5

setoff from parts of Award II because the same parties would owe mutual debts.

The second panel issued its award ("Award II") on April 25, 2005. Defendant sought clarification of Award II. Part of Defendant's request assumed that Award II's amount setoff the amount awarded to FFIC and BIC under Award I. The panel issued a clarified version of Award II. In Award II, the panel stated:

> Trygg shall pay [Plaintiffs] the sum of $2 million. This sum shall be in satisfaction of all claims between the parties under all of their contracts, including the Memorandum of Agreement (as amended), the . . . [1991 amendment], the $3 million and $6 million promissory notes and the first excess of loss treaties. In the determination of this sum, the Panel considered Trygg's obligation of approximately $4.8 million . . ., all accrued interest thereon through the [specified] date . . . . Th[e] note(s) shall be considered to be fully paid by [Plaintiffs] as the result of Trygg'[s] payment of the $2 million as ordered herein.

(Amer Aff. Ex. V at 1.) The $4.8 million obligation was Defendant's debt under Award I.

Upon presenting Award II for confirmation, this court held that Award II was ambiguous because this court could not determine if Award II setoff amounts due under Award I or whether Award II supplemented Award I. On December 2, 2005, this court remanded Award II to the arbitration panel for clarification of its intent. This court sent the following question to the panel members, requesting only a "yes" or "no" answer:

> Was the panel's intent to make an award in Award II separate from and in addition to Award I, meaning Trygg-Hansa owes approximately $4.8 million to Burlington Insurance and First Financial under Award I and the additional amount of $2 million to Burlington Insurance, First Financial, and Burlington Insurance

>     Group, Inc. under Award II, for a total of
>     approximately $6.8 million due from Trygg-Hansa?

(12/2/2005 Order at 2.) The court received two "no" answers, while one panel member did not respond. Plaintiffs' evidence suggests the third arbitrator misplaced his mailing while relocating his residence. Plaintiffs also suggest the question confused another arbitrator.

**II. ANALYSIS**

The issue before this court is whether to confirm Award II, and then, what effect, if any, Award II's confirmation has on Award I, which this court has already reduced to judgment. Plaintiffs argue that Award II has no effect upon Award I. Thus, the court should confirm Award II and lift the stay on execution for Award I's judgment. Plaintiffs' alternative argument is that if this court were to accept Defendant's interpretation of Award II, then Award II arbitrators exceeded their authority, and Award II must be vacated. Defendant argues that Award II setoff amounts due under Award I, only Award II is enforceable, and the court should vacate, pursuant to Federal Rule of Civil Procedure 60(b), Award I's judgment. This court must determine the meaning of Award II and confirm or vacate that award. The court must then decide the appropriate action as to Award I's judgment.

The court holds that Award II does not supplement Award I. Though the court notes, as it implicitly did in its December 2005 order, Award II's language could support both Plaintiffs' and Defendant's reading, the partial response of the panel shows that

7

Award II does not supplement Award I.  Both panel members that responded answered "no" to the court's question that asked whether Defendant must pay Plaintiffs the amounts awarded under Award II and Award I.  Plaintiffs argue that the court's question was ambiguous and the two responses are insufficient to establish the panel's intent because the panel never assembled, discussed the matter, and decided as a whole, as the members would have done in rendering an arbitral award.  This court, Plaintiffs argue, only has the personal thoughts of two of the panel members, not the whole panel.

The court holds that the question was not ambiguous.  The court carefully constructed the question to the arbitration panel with the parties' review.  The question was as clear as possible, and not confusing, in asking if the panel intended Defendant, after the panel rendered Award II, to owe Award II and Award I.  The court also sees nothing to suggest "partial setoff" of the awards.  Thus, the court's all-or-nothing question on setoff was appropriate, and no further discovery on the panel's intent is needed.

The court additionally holds that the partial response is sufficient to establish the panel's intent.  The arbitration clauses state that the panel's majority decision governs in deciding a matter properly before the panel.  Even though the clauses do not explicitly address the approval needed for an award's clarification, imposing the majority rule upon the panel's clarification of Award II is reasonable given the broad

8

arbitration clauses. If the majority could decide the award in the first instance, then it can also decide a clarification of the same award. Thus, pursuant to the majority's response to the court's question, Award II eradicated any relief under Award I. The court must next decide if the panel had authority to setoff awards.

A court can review an arbitration award for exceeded authority. When a panel exceeds its authority, "the United States court in and for the district wherein the award was made may make an order vacating the award upon [proper] application." 9 U.S.C. § 10(a). Furthermore, "[f]ederal courts may vacate an arbitration award [not] only upon a showing of one of the grounds listed in the Federal Arbitration Act, [but also] if the arbitrator acted in manifest disregard of law." Apex Plumbing Supply, Inc. v. U.S. Supply Co., 142 F.3d 188, 193 (4th Cir. 1998). Federal courts have such narrow review of arbitration awards in order "to preserve the benefits of arbitration . . ., [including] reduced delay and expense, and to prevent arbitration from becoming a preliminary step to judicial resolution." Id. at 193 n.5. Thus, "the single question is whether the award, however arrived at, is rationally inferable from the contract." Id. In conducting such narrow review, "any doubts concerning the scope of the arbitrators' remedial authority[] are to be resolved in favor of the arbitrators' authority as a matter of federal law and policy." Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 991 F.2d 141, 147 (4th Cir. 1993) (quoting Willoughby

Roofing & Supply Co. v. Kajima Int'l, Inc., 598 F. Supp. 353, 358 (N.D. Ala. 1984), aff'd per curiam, 776 F.2d 269 (11th Cir. 1985)).

Plaintiffs argue that the second arbitration panel inappropriately, in using setoff, reassessed Award I's merits and adjusted it when deciding offset. Plaintiffs do not show proof of any redecision of a decided matter. Based on the panel's award and clarification, the panel merely used setoff, treating Award I as a debt and not redeciding the claims that created this debt. The fact that the panel found mutuality, which Plaintiffs also argue to be beyond the panel's authority, does not mean it redecided the merits. The panel chose a remedy that created one arbitration award, a result rationally inferable from arbitration clauses, as judicially interpreted, that cover any and all claims deriving from the contracts. If the clauses cover all claims, then the panel may rationally issue one final award after multiple rounds of arbitration.

Plaintiffs also argue that setoff was not presented to the arbitration panel. In its position statement for Award II's arbitration, Defendant highlighted that an issue for the second panel was

> whether [BIC] and FFIC are obligated to repay the loan, or whether [Defendant's] sole recourse is under the promissory note issued by BIG. The resolution of this issue will determine whether [Defendant] can offset the loan balance against sums awarded to [BIC] and FFIC in the [f]inal [a]ward issued by the panel in Arbitration I.

10

(Amer Aff. Ex. Q at 6-7.) Oral arguments and other briefs contain similar arguments. Defendant posed the issue of setoff to the second panel.

Finally, Plaintiffs argue there was no basis to use setoff because Award II gave relief to all Plaintiffs, while Award I gave relief to BIC and FFIC. The second panel decided the issue of setoff, however it arrived at that decision, and Plaintiffs do not show any appropriate justification, under the FAA or governing case law, for this court to vacate that assessment. The panel had the power to decide setoff given the arbitration clauses, Defendant presented the issue, and Plaintiffs present nothing showing this to be a violation of 9 U.S.C. § 10 or a manifest disregard of the law. Except under those narrow grounds, this court may not reexamine the award and vacate it; the court must then only decide "whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it." Remmey v. PaineWebber, Inc., 32 F.3d 143, 146 (4th Cir. 1994) (internal quotation marks omitted) (quoting Richmond, Fredericksburg & Potomac R.R. Co. v. Transportation Communications Int'l Union, 973 F.2d 276, 281 (4th Cir. 1992)). The court holds that no facts justify vacating the award.

Given that Award II's panel offset Award I within Award II, and had such power, the court will next consider Defendant's Rule 60(b) motion. Federal Rule of Civil Procedure 60(b) states "the court may relieve a party . . . from a final judgment" for

various reasons, including for "any . . . reason justifying relief from the operation of the judgment." The court holds that because the arbitration award that justified Award I's stayed judgment has been factored into and setoff within another arbitration award, Award I's judgment should no longer be effectual. For these reasons, the court will remove the judgment pursuant to Rule 60(b).

## III. CONCLUSION

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

This the 16th day of May 2006.

                                                                                  */s/ William L. Osteen*
                                                                    United States District Judge